**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA** :

   **v.** :

**HAMZE EL-NAJJAR** : **Criminal No. 09-CR-744**
 **a.k.a.  Hamze Al-Najjar**

**DEFENDANT'S ANSWER TO GOVERNMENT'S MOTION
FOR PRETRIAL DETENTION**

AND NOW COMES, Jeffrey M.  Miller, Esquire of Nasuti and Miller, The Public Ledger Building, Suite 1064, 150 S.  Independence Mall West, Philadelphia, Pennsylvania  19106 and Thomas Cammarata, Esquire of Cammarata, Nulty & Garrigan, LLC, 549 Summit Avenue, Jersey City, NJ 07306  respectfully filing said Answer to the government's Motion for pretrial detention and responds as follows:

1)    The defense is in possession of the government's Motion for Pretrial Detention which sets forth a hodge podge of speculation, conjecture and irrelevant assertions in an effort to convince this Honorable Court that the defendant, somehow, is a risk of flight.  The constellation of points made by the government in an effort to "connect the dots" only tends to obscure the actual picture in that this defendant poses no threat to flee the jurisdiction.

2)    As an example, the government sets forth on page four of their Motion that the defendant has "managed to retain the services of two criminal attorneys for these proceedings".  Not only is this factually inaccurate but is totally devoid of any probative value.  Indeed, the defendant

retained only the services of counsel Thomas Cammarata, Esquire of Jersey City, New Jersey who, in seeking out local counsel, brought in moving attorney, herein.  As such, the defendant did not retain two lawyers to represent him and even if he had done so, it is totally irrelevant to the question of bail in view of the fact that most defendants, as the government must be fully aware, contact friends and family for financial assistance with respect to both attorney fees and bail.

The relevancy, if any, of the fact that the defendant may have two attorneys is equal in weight to the government's general policy of having an ensemble of Assistant U.S. Attorney's, two in this case, prosecuting this matter.  In summary, whether there is an ensemble of prosecutors or two or more lawyers is totally irrelevant with respect to the question of whether this defendant poses a flight risk.

3)      On pages two and three of the government's Motion for Detention, there are allegations theoretically in support of the defendant's guilt but, indeed, show that he cooperated with the agents in providing statements allegedly admitting his involvement in these rather routine charges pertaining to knock-off foot wear and some electronic equipment.  If any inference can be made by this assertion by the government, it is that the defendant was in a cooperative mode.  Indeed, following the arrest, defendant met for approximately an hour and a half with the government, represented by counsel, and discussed the underlying facts relating to the charges in the Indictment.

4)      Foreign born/Lebanon - The government suggest that because the defendant was born in Lebanon, has a long history of shipping merchandise to Africa and other countries, that this somehow creates a presumption that he intends to flee the jurisdiction.  It is respectfully submitted that the only inference that can realistically be reached from his long time business affairs by shipping cars and/or clothing to foreign countries is that he, indeed, has an established business in

-2-

this country and the fact that he exports items and/or was born in Lebanon is certainly not cause to believe that he would flee the jurisdiction. If this were true, then each defendant, in any case, who either was foreign born or was involved in the import/export business, would therefore trigger a presumption of flight. The government has been unable to "connect the dots" and this contention is without basis in fact nor does it seem logical under the particular circumstances of this matter.

5)    The government asserts that upon the arrest of the defendant some 268 credit cards were seized.[1] What may be relevant to the issue of the credit cards is the fact that the defendant is not charged, directly or indirectly, in any credit card fraud. Also, the government's Motion fails to state that for years the defendant lived in his apartment with his extended family, mother and siblings, and all the seized credit cards were, upon information and belief, located in one drawer. Defense counsel has been advised that these credit cards are virtually all in the name of family members, many of them are expired cards from years past, numerous credit cards were simply received in the mail and "thrown into the drawer" and there is no basis in fact for again suggesting that the accumulation of credit cards, under these particular circumstances, creates an inference of flight.

6)    Roots - The government has averred in their Motion that the defendant does not have ties to the community in this jurisdiction. Simply put, that is not the test. The question is not whether a New York resident has ties to this jurisdiction, which he most certainly does not, but whether he has ties to the community wherein he resided. The defense has submitted, in conjunction

---

[1] Originally, the defense was advised that there was 177 credit cards and it is assumed that further review of the seized material yielded the new figure of 268 or there is an error in the mathematics. In either event, the defense concedes that there was a large amount of credit cards seized at the time of the arrest.

with their Motion for Bail, many documents, photographs and a written lease showing that the defendant has resided in the same apartment, for many years, with his family (ten years). These documents show strong ties to the New York community and the argument that he has no roots in our jurisdiction is irrelevant.

In summary, the Court is faced with deciding whether to release a 27 year old man who has no prior criminal record, cooperated with law enforcement authorities and is charged in a fairly routine case with transactions relating to knock off shoes and stolen I-phones. He has a long time business entity in the New York area dealing in vehicles and the fact that he has hired one or more attorneys is not evidence of flight but does create a presumption that he intends to confront the charges.

The bail package proposed by the defense, which involves a $100/10% cash with ground positioning system and/or monitoring electronic devices, certainly would assure that this defendant appears in Court. The genesis of the bail money, if posted, would come from friends and family members and the fact that the defendant may have credit card balances, as most folks do in our country, again does not raise any inference that he would flee the jurisdiction.

**Respectfully submitted,**

_____
**JEFFREY M. MILLER, ESQUIRE**

_____
**THOMAS CAMMARATA, ESQUIRE**
**Attorneys for Defendant,**
        **HAMZE EL-NAJJAR**

**Dated:        December 16, 2009**

-4-

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served this

16th  day of December 2009 by United States First Class Mail, postage prepaid, upon the following:

**Nancy Beam Winter, AUSA**
**United States Attorney's Office**
**615 Chestnut Street, Suite 1250**
**Philadelphia, PA  19106**

 

**JEFFREY M.  MILLER**

 

**THOMAS CAMMARATA**